IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PROGRESSIVE PIPELINE MANAGEMENT, LLC : : : v. : : N. ABBONIZIO CONTRACTORS, INC., : ET AL. : | CIVIL ACTION NO. 10-4551 |

**SURRICK, J.**                                                                             APRIL __7__, 2011

## MEMORANDUM

Presently before the Court is Defendants' Motion to Compel Arbitration. (ECF No. 5.) For the following reasons, Defendants' Motion will be granted in part and denied in part.

**I.  BACKGROUND**

On July 10, 2009, Defendant Abbonizio Contractors entered into a contract with the Northampton Municipal Authority ("Authority") to construct and rehabilitate a sanitary sewer system. In connection with the project, Abbonizio purchased a surety bond from Defendant Arch Insurance naming Abbonizio as principal.[1] (Pl.'s Opp'n Ex. B, ECF No. 10.) Arch issued a surety bond to guarantee Abbonizio's payment to any person that furnished materials or services during the course of the project.

Al Conrad, Plaintiff Progressive Pipeline Management's vice president, engaged in discussions with Christopher Sullivan, Abbonizio's manager, about Plaintiff working as a subcontractor on the project. On July 10, 2009, Conrad submitted a proposal for Plaintiff to

---

[1] When deciding a motion to compel arbitration, a court may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party. *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 540 n.1 (E.D. Pa. 2006).

1

perform the requested work. On August 10 and 11, Conrad and Sullivan spoke on the phone to discuss the scope of the work and the terms in Conrad's proposal. (Decl. of Christopher Sullivan Ex. A at ¶ 5, ECF No. 12.) On August 11, Sullivan transmitted a written agreement offering Plaintiff a subcontracting position on the project. (*Id.* Exs. B-C.) Abbonizio's proposed contract included a transmittal letter, which states "[i]f you have any questions or any of the above referenced items are missing, please contact me." (*Id.* Ex. B.) Conrad signed the contract on behalf of Plaintiff that same day.

The subcontract agreement states that if the principal contract between Abbonizio and the Authority provides for arbitration, then all claims arising out of the subcontract shall at the sole election of Abbonizio also be decided by arbitration.[2] Conrad did not raise any questions or concerns regarding this arbitration clause before signing the contract. (Decl. of Christopher Sullivan ¶¶ 8-10.) The principal contract between the Authority and Abbonizio provides that all "claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof shall be decided by mutual agreement to arbitration in accordance with the Uniform Arbitration Act and the Construction Arbitration Rules of the American Arbitration

---

[2] Specifically, the contract between Plaintiff and Abbonizio contains the following paragraph regarding arbitration:

> In the event that the PRINCIPAL CONTRACT provides for the arbitration of any or all claims, disputes or other matters in question between the Owner and CONTRACTOR thereunder, or with respect thereto, then all claims, disputes and other matters in question arising out of, or relating to, this SUBCONTRACT, or the breach thereof, shall at the sole election of CONTRACTOR be decided by arbitration in the same manner and under the same procedure as provided in the PRINCIPAL CONTRACT with respect to disputes between the Owner and CONTRACTOR.

(Compl. Ex. C at ¶ 24, ECF No. 1.)

Association." (Mot. to Compel Ex. B at ¶ 30.)

On December 31, 2009, after Plaintiff completed its work for the project, it submitted an invoice in the amount of $80,831.87 to Abbonizio. The invoice included charges for covered tasks under the subcontract as well as additional charges. Abbonizio responded with a letter refusing payment. Thereafter, Plaintiff again demanded payment from Abbonizio and sent notice to Arch, as the surety, demanding that it pay all amounts owed under the subcontract. To date, Plaintiff has not been paid.

On September 9, 2010, Plaintiff filed this lawsuit against Defendants Abbonizio and Arch making claims for violation of the Pennsylvania Prompt Payment Act, 62 Pa. Cons. Stat. §§ 3931 *et seq.* (Count I), Breach of Contract (Count II), Unjust Enrichment (Count III), Fraud (Count IV), Negligence/Negligent Misrepresentation (Count V), and Breach of Payment Bond (Count VI). Defendants responded by filing the instant Motion to Compel Arbitration. Plaintiff opposes arbitration.

## II. LEGAL STANDARD

Motions to compel arbitration are reviewed under the standard for summary judgment in Federal Rule of Civil Procedure 56(c). *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 & n.3 (3d Cir. 2009); *Ostroff*, 433 F. Supp. 2d at 541. A court will compel arbitration only when there is "no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis*, 560 F.3d at 159 (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)). The court must consider all evidence provided by the party opposing arbitration and draw all reasonable inferences in that party's favor. *Ostroff*, 433 F. Supp. 2d at 541.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, "establishes a strong federal policy in favor of compelling arbitration over litigation." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000). Section 2 is the primary substantive provision of the FAA, declaring that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (citing 9 U.S.C. § 2). Before compelling arbitration, a court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Throughout the inquiry, there is a presumption in favor of arbitrability. *Id.*

In determining whether a valid arbitration agreement exists, courts look to ordinary state-law principles of contract formation. *Kirleis*, 560 F.3d at 160; *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 264 (3d Cir. 2003). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999).

### III. DISCUSSION

Plaintiff argues that the subject arbitration provision does not compel arbitration for three reasons. (Pl.'s Opp'n 2.) First, the clause does not demonstrate an unequivocal agreement to arbitrate. Second, the clause is unconscionable. Third, the claims against Arch are outside the scope of the provision.

#### A. Agreement to Arbitrate

Plaintiff argues that its contract with Abbonizio does not demonstrate a mutual agreement to arbitrate. Under Pennsylvania law, contract formation requires: (1) a mutual manifestation of an intention to be bound; (2) terms sufficiently definite to be enforced; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002). The Pennsylvania Supreme Court has held that an arbitration agreement must be "clear and unmistakable" and cannot arise "by implication." *Kirleis*, 560 F.3d at 161 (quoting *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926, 927 (Pa. 1964)). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980).

Plaintiff argues that the arbitration clause does not manifest a clear and unmistakable agreement to arbitrate because the provision provides that arbitration might, or might not, apply depending on the language in the principal contract between the Authority and Abbonizio. In his affidavit, Plaintiff's Vice President, Alan Conrad, who executed the subcontract on behalf of Plaintiff, states that Plaintiff "never agreed to arbitration. At the time of execution, I had no knowledge regarding the terms of Abbonizio's principal contract for the project. I did not receive a copy of the principal contract." (Pl.'s Opp'n Ex. 5 at ¶ 12.) Conrad maintains that Sullivan, Abbonizio's project manager, never instructed him with respect to the terms of the principal contract. (*Id.*) In addition, Plaintiff argues that Defendants' counsel, in a letter written to Plaintiff's counsel, states that he did not even know whether arbitration applied under the subcontract without first reviewing the principal contract.[3]

---

[3] The letter states, in part:

As we discussed today, I am in the process of obtaining a copy of the prime contract

Plaintiff also argues that the arbitration agreement lacks clarity because arbitration only applies if Abbonizio says so, and that claims arising out of the subcontract are subject to arbitration at the "sole election" of Abbonizio. (Compl. Ex. C at ¶ 24.) In this case, Abbonizio exercised its discretion to arbitrate the dispute after Plaintiff brought suit in federal court. Plaintiff contends that the sole election clause makes the contract ambiguous.

Plaintiff's arguments are without merit. The agreement to arbitrate is "clear and unmistakable" and does not arise "by implication." The agreement contains two conditions precedent before disputes arising out of the contract may be subject to arbitration: 1) the presence of an arbitration agreement in the principal contract; and 2) Abbonizio's election to arbitrate. Neither of these conditions is ambiguous; they either occur or they do not occur. The caselaw does not provide that an arbitration agreement must state definitively, from the outset, whether the parties must arbitrate their disputes. The conditions precedent do not create ambiguity in the contract. The principal contract here contains an arbitration agreement and Abbonizio elected to arbitrate its dispute with Plaintiff. Since both conditions precedent are satisfied, the contract unambiguously provides for arbitration.

Plaintiff's arguments that it had no knowledge of the terms of the principal contract and that it was never physically furnished a copy of the principal contract are similarly unavailing.

---

between Abbonizio and Northampton to determine if it contains an arbitration clause. The subcontract between Abbonizio and PPM states that if the prime contract contains an arbitration clause, all claims arising out of the subcontract are also to be submitted to arbitration at the election of Abbonizio. Once I have reviewed the prime contract, I will contact you regarding Abbonizio's intentions vis-à-vis arbitration.

(Pl.'s Opp'n Ex. D.)

Plaintiff may not avoid its contractual obligations based upon the fact that none of its employees read or understood the terms of the contract. *See Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 222 (3d Cir. 2008) ("[E]very contracting party has the duty 'to learn and know the contents of a contract before he signs and delivers it.'") (citations omitted); *Tose v. First Pa. Bank, N.A.*, 648 F.2d 879, 900 (3d Cir. 1981) ("Ignorance of the contents of a document or failure to read before signing is no defense to a contractual obligation under Pennsylvania law.") (citing cases). Furthermore, it is well settled that a "contract may incorporate by reference provisions contained in another instrument so long as the incorporated provisions are 'identified beyond all reasonable doubt.'" *Advanced Tubular Prods., Inc. v. Solar Atmospheres, Inc.*, No. 03-946, 2004 WL 540019, at *5 (E.D. Pa. Mar. 12, 2004) (quoting *Standard Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 447 n.10 (3d Cir. 2003)); *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 324 F. Supp. 2d 731, 749 (W.D. Pa. 2004) ("So long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including a separate agreement to which they are not parties.").

Applying these principles of contract formation, Plaintiff's argument that Conrad had no knowledge of the arbitration provision in the principal contract must fail. Disputes arising out of the contract between Plaintiff and Abbonizio are potentially subject to arbitration if the principal contract "provides for the arbitration of any or all claims." (Compl. Ex. C at ¶ 24.) The contract unambiguously identifies the principal contract, which provides that all claims arising out of the principal contract "shall be decided by mutual agreement to arbitration." (Mot. to Compel Ex. B at ¶ 30.)

7

Conrad contends that he did not receive a copy of the principal contract and had no knowledge of its terms prior to signing the agreement. Conrad, however, does not advise that he requested the principal contract or that Abbonizio prevented Plaintiff from obtaining a copy of the document. The transmittal letter, which accompanied the proposed contract, said that if Conrad had any questions, he could contact Sullivan. A prudent contracting party would have requested a copy of the principal contract to determine whether it affected the subcontract.

Clearly the incorporated document, the principal contract, was identified. Plaintiff offers no evidence to suggest that the principal contract was not available upon request. We will not relieve Plaintiff of its contractual obligation to arbitrate under these circumstances.

**B.     Unconscionability**

In determining whether an arbitration clause is unconscionable, courts apply state-law rules of contract formation. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 200 (3d Cir. 2010). In Pennsylvania, a party must show both procedural and substantive unconscionability to void a contract. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007); *Harris*, 183 F.3d at 181.

Procedural unconscionability relates to the process by which the parties enter into the contract. A contract is procedurally unconscionable when one party had no meaningful choice in the acceptance of the challenged provision. *Salley*, 925 A.2d at 119-20. This element is often satisfied if the agreement constitutes a contract of adhesion. *Alexander*, 341 F.3d at 265. A contract of adhesion is one offered by a party with excessive bargaining power and presented to the other party on a take-it-or-leave-it basis. *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004) (citations omitted); *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1066-67

8

(Pa. Super. Ct. 1992). Substantive unconscionability arises when a contractual provision unreasonably favors the party asserting it. *Salley*, 925 A.2d at 119-20. When a party invokes unconscionability as a defense, "the court should consider whether, in light of the general commercial background and the commercial needs of a particular trade, the clause is so one-sided that it is unconscionable under the circumstances." *Quilloin v. Tenet Healthsystem Phila., Inc.*, __ F. Supp. 2d __, No. 09-5781, 2011 WL 227631, at *12 (E.D. Pa. Jan. 20, 2011) (citations omitted).

Plaintiff argues that the agreement is procedurally unconscionable. To support this argument, Plaintiff relies exclusively on Conrad's affidavit. (Pl.'s Opp'n Ex. 5.) Conrad states that on August 10 and 11, 2009, he had telephone conversations with Sullivan during which they "finalized the agreement with respect to the work that PPM [Plaintiff] would perform and the unit prices that Abbonizio would pay for the work." (*Id.* ¶ 7.) Conrad and Sullivan never discussed arbitration during these conversations. (*Id.*) Sullivan then forwarded a subcontract to Conrad with Plaintiff's quote attached. (*Id.* ¶ 8.) The subcontract, which was already signed by Sullivan, was a "pre-printed form document drafted by Abbonizio that included a large number of terms" they had not previously discussed. (*Id.*) Conrad maintains that it was his understanding that "(a) the subcontract was non-negotiable, (b) the terms in the subcontract were required to enter into an agreement with Abbonizio for the project, and (c) the subcontract was on a "take it or leave it" basis. (*Id.* ¶ 9.)

We are satisfied that the subcontract is not procedurally unconscionable. Even if we accept all of the statements in Conrad's affidavit, Plaintiff nevertheless fails to demonstrate a genuine issue of material fact. Conrad advises that he had telephone conversations with Sullivan

9

over the course of two days during which they "finalized the agreement." The affidavit indicates that far from being compelled to sign a contract of adhesion, Conrad participated in negotiations regarding Plaintiff's anticipated work on the project.

Conrad contends that it was his understanding that the proposed subcontract he received was non-negotiable and that it was being offered on a "take it or leave it" basis. "[C]onclusory, self-serving affidavits" are insufficient to withstand a motion to compel arbitration. *See Kirleis*, 560 F.3d at 161. In addition, Conrad's assertions are belied by the facts. First, Sullivan's transmittal letter, which accompanied the proposed contract, said "[i]f you have any questions or any of the above referenced items are missing, please contact me." (Decl. of Christopher Sullivan Ex. B.) This statement does not evince any hostility towards negotiating the terms of the contract. Second, Plaintiff did, in fact, make a revision to the written contract. (*Id.* at ¶ 9.) In the proposed contract sent by Sullivan, Abbonizio anticipated that Plaintiff would commence work "on or about September 2, 2009." (Compl. Ex. C at ¶ 9.) Someone on behalf of Plaintiff, presumably Conrad, crossed this out and wrote "to be determined." (Decl. of Christopher Sullivan Ex. B. at ¶ 9; *Id.* Ex. C at ¶ 9.) Plaintiff made no other revisions and did not object to any other provisions of the contract. Third, Plaintiff does not offer any evidence, other than Conrad's affidavit, to support its argument that the subcontract was non-negotiable. Plaintiff does not produce a single fax, email, or letter demonstrating that Abbonizio refused to cooperate or was unwilling to entertain proposed changes to the agreement.

Plaintiff cites several cases in support of its position. The cases cited by Plaintiff are inapposite. In *Hopkins v. New Day Financial*, all of the plaintiffs were presented with an arbitration agreement on either their first day of employment or several months after

commencing work. 643 F. Supp. 2d 704, 717 (E.D. Pa. 2009). The plaintiffs did not know that they were required to sign an arbitration agreement before it was presented to them and they believed that they would be terminated if they refused to sign it. *Id.* at 717-18. They felt as though they could not ask questions, they were not given a copy of the document at the time of signing, and they were unable to consult with counsel. The court found that these facts gave rise to an inference that plaintiffs were presented with an adhesion contract on a take-it-or-leave-it basis. *Id.* at 718.

In *Roberts v. Time Plus Payroll Services, Inc.*, the plaintiff was employed for over 20 years with Payroll Data Systems prior to its acquisition by the defendant Time Plus. No. 07-4101, 2008 WL 376288, at *1 (E.D. Pa. Feb. 7, 2008). Time Plus conceded that following its acquisition of Payroll it required the plaintiff to accept an arbitration agreement in a take-it-or-leave-it situation. *Id.* at *3. Accordingly, the court found the element of procedural unconscionability satisfied.

In *Ostroff*, the plaintiff was forced to move her mother out of an assisted-living facility, which was closing for financial reasons. 433 F. Supp. 2d at 540. On the day the plaintiff was moving her mother into the defendant's facility, the plaintiff was presented with a residency agreement. She asked to have her attorney review the 31-page document but was told that this would be "pointless" because the defendant would not accept any changes. The plaintiff's mother could not move into the defendant's facility until the plaintiff signed the agreement. The court found that the defendant offered plaintiff a contract of adhesion, which was procedurally unconscionable. *Id.* at 544.

The plaintiffs in these cases were all individuals in relatively weak bargaining positions.

11

The party with superior bargaining power prevented them from having counsel review the proposed documents and either explicitly or tacitly communicated to the plaintiffs that the terms were non-negotiable. In contrast, Plaintiff here is a sophisticated business entity. Plaintiff sent a proposal to Abbonizio to work as a subcontractor on a municipal project and was offered the job after Conrad and Sullivan negotiated and "finalized the agreement" with respect to the scope of the work and the price per unit. Conrad was given the opportunity to ask questions before signing. The circumstances surrounding the subcontract all suggest that this was an arms-length transaction. The fact that the parties never discussed the arbitration provision does not militate against its enforcement; indeed, Conrad had an obligation to understand the contents of this contract before he signed it.

Since we find that Plaintiff has not demonstrated procedural unconscionability, we need not reach the question of substantive unconscionability. *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224, 230 (3d Cir. 2008) ("Because we have concluded that the arbitration agreement here was not procedurally unconscionable and reverse on that basis, we need not decide whether the District Court's decision as to substantive unconscionability was correct."); *Clerk v. ACE Cash Express, Inc.*, No. 09-5117, 2010 WL 364450, at *10 (E.D. Pa. Jan. 29, 2010) ("Because Plaintiff has failed to meet her burden of proving procedural unconscionability, the Court need not delve into a[n] inquiry regarding substantive unconscionability.").

Nevertheless, we conclude that Plaintiff has also failed to establish substantive unconscionability. Plaintiff argues that the arbitration agreement is substantively unconscionable to the extent that it permits arbitration at the sole election of Abbonizio. This clause does not establish substantive unconscionability. Such clauses are not uncommon in construction

contracts.  In fact, courts regularly enforce such provisions.  *See, e.g.*, *U.S. ex rel. Frank M. Sheesley Co. v. St. Paul Fire & Marine Ins. Co.*, 239 F.R.D. 404, 416-17 (W.D. Pa. 2006); *U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 95, 97 (D.D.C. 2009); *Builders Group LLC v. Qwest Commc'ns Corp.*, No. 07-5464, 2009 WL 3170101, at *1, 5-6 (S.D.N.Y. Sept. 30, 2009).

Plaintiff likens the sole election clause to an arbitration provision that authorized one party to choose the arbitrator or arbitration panel in its sole discretion.  *Roberts*, 2008 WL 376288, at *3.  The court in *Roberts* found that "an agreement giving only one side a voice in choosing the adjudicator raises an appearance of partiality" and is therefore substantively unconscionable.  *Id.*  Plaintiff's analogy fails.  The arbitration provision in Plaintiff's subcontract contains no procedural deficiencies.  There are no identified arbitration procedures that will favor Abbonizio.  On the contrary, the principal contract dictates that any arbitration must comply with the Uniform Arbitration Act and the Construction Arbitration Rules of the American Arbitration Association.  (Mot. to Compel Ex. B at ¶ 30.)  That Abbonizio may alone elect arbitration does not mean that the arbitral process has any hint of partiality.  The arbitration agreement is not substantively unconscionable.

### C.  Claims Against Arch

In Count VI of the Complaint, Plaintiff argues that Arch breached its obligation under the surety bond.  Plaintiff alleges that it notified Arch of Abbonizio's refusal to pay Plaintiff pursuant to the subcontract and that it has otherwise satisfied all conditions precedent to asserting a claim against the surety.

Plaintiff argues that the arbitration provision does not extend to Plaintiff's claims against

Arch. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citations omitted); *see McFarley v. Am. Indep. Ins. Co.*, 663 A.2d 738, 739 (Pa. Super. Ct. 1995) (citations omitted). We agree.

Even though Plaintiff's contract with Abbonizio contained an arbitration provision, Plaintiff and Arch did not separately agree to arbitrate. However, Arch has agreed to join the arbitration and be bound by the decision of the arbitrator. Arch argues that under these circumstances no party will be prejudiced if all of the claims against Abbonizio and Arch are decided in arbitration.

We are compelled to conclude that Plaintiff cannot be required to arbitrate its claims against Arch. *See Sheesley*, 239 F.R.D. at 417 ("The Court finds, however, that the FAA does not compel [the subcontractor] to arbitrate its claims against the Sureties, who never adopted the terms of the Subcontract and did not enter a separate arbitration agreement with Plaintiff."). We may not force arbitration upon the parties. They must both consent to such proceedings.[4]

Arch argues in the alternative that we should stay Plaintiff's case against Arch pending the disposition of Plaintiff's arbitration against Abbonizio. Arch raised this argument for the first

---

[4] There are cases where the performance bond incorporates by reference a subcontract which contains an arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 535-38 (3d Cir. 2009) (reviewing cases); s*ee U.S. Fid. & Guar. Co. v. W. Point Constr. Co.*, 837 F.2d 1507, 1507-08 (11th Cir. 1988). Courts have found that where the bond effectively incorporates by reference an arbitration provision in another document, a party, including a surety, is required to arbitrate. *See Century Indem.*, 584 F.3d at 535-38. In the instant matter, there is no dispute that the payment bond does not incorporate by reference an agreement to arbitrate.

14

time in its Reply and Plaintiff has not responded.[5] (Defs.' Reply 10, ECF No. 11.)

When sureties file motions to stay litigation pending an arbitration between the contractor and subcontractor, courts have generally been receptive. *See, e.g.*, *A.A. Bellucci Constr. Co. v. U.S. Sur. Co.*, No. 09-1755, 2010 WL 456775, at *1-2 (M.D. Pa. Feb. 2, 2010); *Sheesley*, 239 F.R.D. at 417-19 (reviewing cases); *Milestone Tarant*, 672 F. Supp. 2d at 100-06.[6] In *Belluci*, the plaintiff subcontractor entered into a contract with a general contractor, CSI, to work on a construction project. 2010 WL 456775, at *1. The contract contained an arbitration agreement. CSI obtained a bond from two sureties to secure payment for all of CSI's subcontractors. The plaintiff later brought suit against the sureties demanding payment under the terms of the bond. The sureties responded by filing a motion to stay pending the outcome of arbitration proceedings between the plaintiff and CSI.

The sureties sought the stay to avoid the time and expense of litigating the same issue twice. The plaintiff argued that the sureties would not necessarily be bound by the results of the arbitration, and as a result, it would be harmed by the delay in discovery. The court rejected the

---

[5] Arch does not present any explanation as to why it is entitled to a stay. Nor does it provide the Court with any citation to support this position. In conclusory form, Arch writes: "If PPM will not agree to have all of the claims tried in one forum, i.e., arbitration, this case should be stayed pending the disposition of the arbitration." (Defs.' Reply 10.) Notwithstanding the inadequate briefing on this issue, our independent review of the caselaw confirms that a stay is appropriate.

[6] Although these cases involve surety bonds issued in accordance with the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, their analyses apply with equal force here. The Miller Act provides: "Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government" a performance bond and a payment pond. *Id.* § 3131(b). Since Arch issued the bond in connection with a municipal, rather than federal, construction project, the Miller Act is inapplicable.

plaintiff's argument because the sureties admitted in their brief that they would be bound by the outcome of the arbitration. The court found that a stay would avoid both unnecessary expense and inconsistent results. The court therefore exercised its discretion and granted the stay. *Id.* at *2.

In *Sheesley*, the court undertook a comprehensive review of the caselaw to determine whether a surety is bound by an arbitrator's decision against a principal. *See* 239 F.R.D. at 417-19 (reviewing cases). The court found that while the Third Circuit has not addressed this precise question, it has held that "an arbitrator's decision was binding against a non-party whose interests were 'directly related, if not in fact congruent' to those of a party in the arbitration proceeding." *Id.* at 418 (quoting *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 155 (3d Cir. 1993)); *see Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993). In *Sheesley*, the sureties and the general contractor shared counsel. 239 F.R.D. at 419. The plaintiff sought to include the sureties in any arbitration with the general contractor, but the sureties declined this invitation. Applying the principles of *Isidor*, the court found that a stay of the plaintiff's claims against the sureties would not force the plaintiff to relitigate issues decided in the arbitration proceeding. *Id.*

In the interests of judicial economy and so as to avoid the possibility of inconsistent results, we will exercise our discretion and stay the litigation against Arch pending the outcome of the arbitration proceedings between Plaintiff and Abbonizio. *See Moses H. Cone*, 460 U.S. at 20 n.23 ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."). We are satisfied that Arch will be

16

bound by an arbitrator's decision against Abbonizio. Defendants share counsel and have directly related, if not congruent interests. *See U.S. ex rel. Skip Kirchdorfer, Inc. v. M.J. Kelley Corp.*, 995 F.2d 656, 661 (6th Cir. 1993) (finding that the sureties had interests "identical" to those of the general contractor). Moreover, Defendants submit in their Reply that "Arch has agreed to join in the arbitration and be bound by the decision of the arbitrator." (Defs.' Reply 10.) Although Arch may not participate in the arbitration without Plaintiff's consent, this statement nonetheless expresses Arch's willingness to be bound by the arbitral decision. Finally, Plaintiff has not filed a surreply opposing Arch's request that we stay the litigation.

Accordingly, we will stay the proceedings against Arch during the pendency of Plaintiff's arbitration with Abbonizio.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion will be granted in part and denied in part. An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**